BOSCAINO COLLISION & TOWING CORP., individually and on behalf of itself and other similarly situated collision repair shops and towing companies located in the City of New York,

Plaintiff,

v.

RUDOLPH J. MEOLA, LAW OFFICE OF RUDOLPH J. MEOLA, and MEOLA LAW FIRM,

Defendants.

**CIVIL CASE NO: 23-cv-7510**

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

**NORRIS McLAUGHLIN P.A.**
Nicholas A. Duston, Esq.
7 Times Square, 21st Fl.
New York, NY 10036
(908) 252-4208
naduston@norris-law.com
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 3

    I.      Boscaino's Complaint focused solely on Mr. Meola's handling of litigations, for Mr. Meola's clients, before the Supreme Court of Albany County ...................................................................................................... 3

    II.     Boscaino's conduct of the VW Litigation and filing of this lawsuit. .................... 5

    III.   Boscaino's attorneys have acknowledged perjury and revealed the improper purpose to "hurt" Mr. Meola through this litigation. ............................. 9

LEGAL ARGUMENT .................................................................................................. 11

    I.      Boscaino and Gary Rosen Esq. should be sanctioned pursuant to 28 U.S.C. § 1927 for their blatantly vexatious litigation conduct. ........................................ 11

    II.     Placing venue for a petition to cancel a garage lien in Albany County has been repeatedly upheld, *including in the pending case against Boscaino* ............ 14

    III.   Any modicum of pre-filing legal research would have revealed that Boscaino's arguments were barred by preclusionary doctrines and the litigation privilege ......................................................................................... 17

          A.    Collateral Estoppel. ................................................................................. 17

          B.    Federal Abstention. ................................................................................. 17

          C.    New York's absolute litigation privilege. ................................................. 19

    I.      Boscaino and Mr. Rosen's bad faith is further demonstrated by the paucity of elements actually pled for any of the Complaints' purported claims. .............. 20

          A.    Boscaino did not plead a single element of a violation of the FDCPA ...................................................................................................... 20

          B.    Boscaino failed to plead even one element of a GBL § 349 violation. .................................................................................................... 21

          C.    Boscaino did not pled a violation of the Sherman Act. ............................ 23

          D.    Boscaino did not plead a claim for abuse of process. .............................. 24

CONCLUSION ............................................................................................................ 25

**Page**

**FEDERAL CASES**

Bank v. Pentagroup Fin., LLC,
  No. 08-cv-5293(JG)(RML), 2009 WL 1606420 (E.D.N.Y. June 9, 2009) ...........................20

Yong Ki Hong v. KBS Am., Inc.,
  951 F. Supp. 2d 402 (E.D.N.Y. 2013) ......................................................................................23

Boyd v. J.E. Robert Co.,
  765 F.3d 123 (2d Cir. 2014)......................................................................................................21

Burnett v. Physician's Online, Inc.,
  99 F.3d 72 (2d Cir.1996)...........................................................................................................18

Cedar Swamp Holdings, Inc. v. Zaman,
  487 F.Supp.2d 444 (S.D.N.Y.2007)..........................................................................................14

Colorado River Water Conservation Dist. v. United States,
  424 U.S. 800 (1976)........................................................................................................17, 18, 19

Conway v. Conway,
  No. 17-CV-8245 (RJS), 2019 WL 1331624 (S.D.N.Y. Mar. 25, 2019)..................................12

Cooter & Gell v. Hartmarx Corp.,
  496 U.S. 384, 412 (1990)...........................................................................................................12

Crown Awards, Inc. v. Trophy Depot, Inc.,
  2017 WL 564885, at *14 (S.D.N.Y. Feb. 13, 2017)..................................................................12

Curry v. City of Syracuse,
  316 F.3d 324 (2d Cir. 2003).......................................................................................................17

Doe v. Cornell Univ.,
  No. 17-cv-0402(GTS)(DEP), 2019 WL 1567535 (N.D.N.Y. Apr. 11, 2019).........................22

Enmon v. Prospect Capital Corporation,
  675 F. 3d 138 (2d Cir. 2012).....................................................................................................12

Gough v. Rossmoor Corp.,
  585 F.2d 381 (9th Cir. 1978) .....................................................................................................24

Hoblock v. Albany Cty. Bd. of Elections,
  422 F.3d 77 (2d Cir. 2005).........................................................................................................17

Hoyos v. City of New York,
  999 F. Supp. 2d 375 (E.D.N.Y. 2013) ......................................................................................25

Huebner v. Midland Credit Mgmt., Inc.,
  897 F.3d 42 (2d Cir. 2018)...........................................................................12, 13

In re 60 E. 80th St. Equities, Inc.,
  218 F.3d 109 (2d Cir. 2000)....................................................................................13

Jordan v. Tucker, Albin & Assocs.,
  No. 13-cv-6863(SIL), 2018 WL 4259987 (E.D.N.Y. Sept. 6, 2018) ....................21

Kelly v. Albarino,
  485 F.3d 664 (2d Cir. 2007).....................................................................................19

Kim v. Kimm,
  884 F.3d 98 (2d Cir. 2018).......................................................................................14

Monroe v. Geo Grp., Inc.,
  No. 14-cv-3130 (ER), 2017 WL 3973942 (SDNY Sept. 7, 2017)...........................12

Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,
  460 U.S. 1 (1983)...............................................................................................18, 19

Nat'l Soc. of Pro. Engineers v. United States,
  435 U.S. 679 (1978).................................................................................................24

Obduskey v. McCarthy & Holthus LLP,
  139 S. Ct. 1029 (2019).............................................................................................21

Officemax Inc. v. Cinotti,
  966 F. Supp. 2d 74 (E.D.N.Y. 2013) .......................................................................19

Oliveri v. Thompson,
  803 F.2d 1265, 1273 (2d Cir. 1986)........................................................................13

Singh v. HSBC Bank USA,
  200 F. Supp. 2d 338 (S.D.N.Y. 2002)......................................................................19

Singh v. NYCTL 2009-A Tr.,
  No. 14 CIV. 2558, 2016 WL 3962009 (S.D.N.Y. July 20, 2016), aff'd, 683 F.
  App'x 76 (2d Cir. 2017)...........................................................................................21

Tessera, Inc. v. Amkor Tech., Inc.,
  No. CV 12-852-SLR, 2014 WL 6997442 (D. Del. Dec. 10, 2014) .........................19

Texaco Inc. v. Dagher,
  547 U.S. 1 (2006).....................................................................................................23

United States v. Seltzer,
  227 F.3d 36 (2d Cir. 2000).......................................................................................12

Winehouse v. GC Servs. Ltd. P'ship,
    No. 16-cv-03110(FB)(RML), 2017 WL 2455075 (E.D.N.Y. June 6, 2017) ...........................20

## STATE CASES

Ally Fin. Inc. v All County Towing,
    166 AD 3d 1442 ....................................................................................................16

Ally Fin. Inc. v. Bill's Towing Serv. Inc.,
    181 AD 3d 1045 (3d Dept. 2020) ........................................................................16

Daimler Trust v Safeway Motors, Inc.,
    2013 NY Slip Op 31965[U], *1 [Sup Ct, Albany County 2013]................................6

Daimler Trust v. SG Autobody LLC,
    112 AD 3d 1123 ....................................................................................................16

Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v.
    Matthew Bender & Co., Inc.,
    37 N.Y.3d 169 (2021) ...........................................................................................22

Lynn v. McCormick,
    153 A.D.3d 688 (2d Dept. 2017) .....................................................................24, 25

Manufacturers & Traders Tr. Co. v. J.D. Marine Serv.,
    187 A.D.3d 1249, 132 N.Y.S.3d 450 (2020) .......................................................16

Matter of Ally Fin. Inc. v Bill's Towing Serv., Inc.,
    181 AD3d 1045, 1045 n 1 (3d Dept 2020) ............................................................6

McMurray v Kiamesha Concord, Inc.,
    178 AD2d 825 (3rd Dept. 1991) ..........................................................................18

Nissan Motor Acceptance Corp. v All County Towing,
    161 AD 3d 1423 (3d Dept. 2018) ........................................................................16

Sharrock v Dell Buick,
    45 NY2d 152 (1978) .............................................................................................16

State of New York v Mersack,
    202 AD2d 899 (3rd Dept. 1994) ..........................................................................15

State of New York v Quintal, Inc.,
    79 AD3d 1357 [3d Dept 2010] .......................................................................15, 18

State v. Konikov,
    182 A.D.3d 750 (2020) .........................................................................................23

Stewarts Tenants Corp v Square Industries Inc.,
    269 AD2d 246 (1st Dept. 2000)............................................................................16

TMCC v. A. Emies Auto Body,
    Index No. 5544-12, Decision and Order (Sup. Ct. Albany Cty. Feb. 7, 2013).......................15

## FEDERAL STATUTES

15 U.S.C.A. § 1692a ...........................................................................................................20

15 U.S.C. 1 .........................................................................................................................23

15 U.S.C. 1 *et. seq.* .........................................................................................................23

15 U.S.C. § 1692 *et. seq.* ..................................................................................5, 13, 20, 21

18 U.S.C. § 1961 *et. seq.* ....................................................................................................2

18 U.S.C. § 1962 ..................................................................................................................7

28 U.S.C. 1927 .....................................................................................................................2

28 U.S.C. § 1927 ......................................................................................................... passim

FDCPA .................................................................................................................13, 20, 21

RICO ........................................................................................................................... passim

Sherman Act............................................................................................................5, 20, 23

## STATUTES

New York General Business Law § 349 ..........................................................................5, 20, 21

## RULES

CPLR § 503...........................................................................................................................15

CPLR § 506(a) ......................................................................................................................15

CPLR § 509...........................................................................................................................15

CPLR § 1002 (b) ..................................................................................................................16

Fed. R. Civ. P. 11(a)(2).........................................................................................................15

Fed. R. Civ. P. 11(b)(2).........................................................................................................20

Fed. R. Evid. 408 .................................................................................................................14

Defendant Rudolph J. Meola, Esq. d/b/a Law Office of Rudolph J. Meola and d/b/a the Meola Law Firm ("Mr. Meola") respectfully submits this memorandum of law in support of his motion for sanctions pursuant to 28 U.S.C. § 1927 relating to the October 6, 2023 complaint (the "Complaint" or "Compl.") filed by plaintiff, Boscaino Collision & Towing Corp. ("Boscaino").

## PRELIMINARY STATEMENT

Our country resolves disputes peacefully through a robust judicial system, and to do so, that judicial system has equally important participants: the litigants, their attorneys, their witnesses, the judiciary, and the jury. If a litigant sought to alter the outcome of litigation by improperly threatening witnesses, the judiciary, jurors, or an opposing party, that litigant would face severe penalties. The same treatment should inure to those who improperly threaten and harass an opposing party's lawyer through bad faith litigation aimed to "hurt" that opposing lawyer solely for doing his job (and doing it successfully).

Boscaino filed this completely frivolous, retaliatory Federal Court lawsuit against Mr. Meola with no intent of getting past a motion to dismiss, much less prevailing on the merits. It is readily apparent from the face of the Complaint in this action that neither Mr. Rosen nor anyone else at the Rosen Law Firm did any legal research whatsoever regarding the four causes of action asserted. Out of all the elements of all four, the Complaint managed to plead one, and only one single element of one of the four claims. And even that appears to have been accidental, and not the result of legal research, because it is so mundane: the Complaint successfully pleads that Mr. Meola regularly files process, *i.e.* lawsuits, something true for any practicing litigator. In addition, the Complaint in this action was barred by multiple preclusionary doctrines, including but not limited to collateral estoppel and certain Federal Court abstention doctrines.

No. The Complaint here was not filed by a litigant with a good-faith dispute requiring this Court's time and attention. The Complaint had so many pleading defects that no serious attorney

could have hoped to prevail on a motion to dismiss, much less on the merits. The only explanation is that neither Boscaino nor its attorneys ever believed or even wanted to prevail in this lawsuit. Rather, Boscaino and its attorneys *solely* filed the Complaint was solely meant to harass Mr. Meola and harm his business, with the hope that Mr. Meola would eventually relent to Boscaino's improper pressure campaign before this Court forced Boscaino and its attorneys to justify this action. Boscaino's attorneys, in fact, explicitly stated that Mr. Boscaino authorized the filnig of the Complaint here because Boscaino's managing agent was "pissed off" that VW Credit would not settle the VW Litigation. Moreover, Mr. Rosen explicitly confirmed that Boscaino would authorize the amendment of this action to add claims under 18 U.S.C. § 1961 *et. seq.* ("RICO") on the outrageous theory that Mr. Meola and his clients are part of a criminal enterprise committing federal felonies, and that Boscaino would do so solely to "hurt" Mr. Meola if Mr. Meola did not do as Boscaino demanded: sell out VW Credit and force them to settle their own action.

Boscaino's and Mr. Rosen's conduct did not merely cross a line; they sprinted headlong past that line without a second thought. Though Boscaino's complaint has since been withdrawn, it was only withdrawn without prejudice, raising the specter of even more frivolous forum shopping in the hope of finding a court more receptive to their improper treatment of Mr. Meola. The Court may sanction Boscaino under its inherent authority, and its attorneys under 28 U.S.C. 1927, which prohibits vexatiously multiplying litigation proceedings. ***These sources of sanction authority are not mooted by Boscaino's withdrawal of its Complaint***. The requisite showing of bad faith appears amply on the record, and Boscaino and Mr. Rosen have shown through their conduct—which included threats against Mr. Meola's attorney in this action—that they will not stop unless the Court makes them.

<u>**STATEMENT OF FACTS**</u>

I.   <u>**Boscaino's Complaint focused solely on Mr. Meola's handling of litigations for Mr.**</u>
     <u>**Meola's clients in the Supreme Court of Albany County.**</u>

The Complaint relates solely to the prior litigation conduct of Mr. Meola, an attorney, in

the course of representing clients against Boscaino and others. Specifically, Boscaino pled that:

> This action is brought against [Mr. Meola] because [Mr. Meola] ha[s] engaged in
> the improper practice of commencing lawsuits and proceedings over the course of
> more than twenty years, in the Supreme Court of the State of New York, County of
> Albany, an improper venue, against hundreds or thousands of automobile collision
> shops and towing companies located in the City of New York, Westchester County,
> Nassau County and/or Suffolk County on behalf of [Mr. Meola's] clients to vacate
> garageman's liens filed by automobile collision shops and towing companies
> located in the City of New York, Westchester County, Nassau County and/or
> Suffolk County for fees for the towing and storage of motor vehicles.

<u>See</u> Compl., ¶ 5.

Boscaino is "a corporation" and "a small business" which tows vehicles when called upon

to do so by the New York City Police Department. <u>Id.</u> at ¶¶ 23-30. Boscaino relies on towing for

the New York City Police Department "to provide revenue for Plaintiff's towing company" and

"to provide revenue for Plaintiff's [sic] towing company's principal." <u>Id.</u> at ¶¶ 32-33. Boscaino

purported to file this action on behalf of a class consisting of other "small business enterprises"

located in New York City or surrounding counties. <u>Id.</u> at ¶¶ 5, 22.

The sole issue Boscaino has with Mr. Meola's litigation conduct is that on behalf of

"numerous automobile leasing companies and finance companies" Mr. Meola has "commenced

litigation… in the Supreme Court... County of Albany against hundreds of… companies which…

are located in the City of New York" and surrounding counties. <u>Id.</u> at ¶¶ 48-49; <u>see also</u> <u>Id.</u> at ¶ 8.

Boscaino pled that Mr. Meola's clients litigate in Albany "even though the subject matter of the

lawsuits, which are automobiles, were chattel at all times located in" or around New York City.

<u>Id.</u> at ¶ 49. Boscaino provided a list of over 300 litigations adjudicated in the New York Supreme

Court, Albany County were Boscaino alleges Mr. Meola was the lead counsel for the plaintiff.  Id. at ¶ 6;[1] see also Id. at ¶ 19.  Boscaino was the defendant in at least two of the litigations, one of which is ongoing:  VW Credit Inc. v. Boscaino Collision & Towing Corp., et.al., Index No. 900899-22 (the "VW Litigation").  ***Boscaino is losing the currently ongoing litigation***.  See § II.

Boscaino alleges that "[t]he only reason" Mr. Meola files complaints "in Albany County, is to cause harm to the" towing companies "located in the City of New York" or surrounding counties.  Id. at ¶ 10.  Boscaino complains that the lawsuits name the New York State Department of Motor Vehicles (the "NY DMV") "solely because" that entity "maintains its principal place of business in Albany County," and that it was "otherwise an improper party and not a necessary party."  Id. at ¶ 9.  Boscaino alleges that "the scheme perpetrated… by filing proceedings… in Albany County… was meant to cause [Boscaino and others] to incur legal fees, travel costs, and fees and to abandon any claims filed under garageman's liens…"  Id. at ¶ 15; see also ¶ 51; 53.

Boscaino acknowledges that Mr. Meola's clients have argued that adding the NY DMV was permitted to seek the relief of "'freez[ing] title' on the vehicles that were the subject of the proceedings," id. at ¶ 12, but complains that the NY DMV has not appeared in any of the "proceedings" Mr. Meola filed on behalf of his clients.  Id. at ¶ 11.  According to Boscaino, there is "no need to name the [NY DMV] as a defendant."  Id. at ¶ 15.  Rather, Boscaino alleges that "[t]he legal proper [sic] mechanism" that "should [be] used" is an "order[] to show cause" directed solely to the towing companies.  Id. at ¶ 14.  That "procedure," Boscaino alleges, "is used by other attorneys… which is the proper procedure…."  Id.; see also Id. at ¶ 15 (providing "an example" of "what should be done" by citing a New York Supreme Court, Nassau County litigation).  Boscaino

---

[1] Mr. Meola has not independently verified whether he appeared as counsel for each plaintiff in each of the listed litigations.

also pleads several anecdotal instances where the judiciary n Albany County has mentioned the practice or ordered a case sent to a different venue.  Id. at ¶¶ 18, 20, 21.

Based on these allegations, Boscaino pleads four counts.  First, Boscaino alleges Mr. Meola's representation of his clients violates the Fair Debt Collection Practices Act ("FDCPA") because placing venue in Albany allegedly is an unconscionable debt collection practice.  See Compl., ¶¶ 54-71.  Second, Boscaino alleges Mr. Meola's representation of his clients violates New York General Business Law § 349, because placing venue in Albany allegedly constitutes a deceptive act in the furnishing of a service.  Id. at ¶¶ 72-76. Third, Boscaino alleges Mr. Meola's representation of his clients violates the Sherman antitrust act, because placing venue in Albany allegedly causes an adverse effect on competition in the New York City market for legal services. Id. at ¶ 77-87.  And fourth, Boscaino alleges Mr. Meola's representation of his clients constitutes an "abuse of process" by placing venue in Albany County.  Id. at ¶¶ 88-92.

## II.     Boscaino's conduct of the VW Litigation and filing of this lawsuit.

Boscaino references the pending VW Litigation, and its conduct of that litigation and this one are both relevant to the request that this Court sanction Boscaino and its attorneys for vexatiously multiplying proceedings in violation of 28 U.S.C. § 1927.

Boscaino is *currently losing* the pending VW Litigation, in which the only remaining procedure is awaiting the Court's decision on an October 13, 2023 inquest into damages to be paid by Boscaino to VW Credit and a pending sanctions motion against its counsel.  See Nov. 20, 2023 Declaration of Rudolph J. Meola, Esq. (the "Meola Decl."), at ¶¶ 13, 19 & Ex. J (court order scheduling inquest), Ex. N (notice of motion for sanctions).  VW Credit commenced the VW Litigation against Boscaino on or about February 8, 2022 seeking to cancel Boscaino's alleged lien on a 2019 Audi vehicle bearing VIN WAUL2AF20KN112497 (the "Vehicle"), recover possession of the Vehicle, and obtain damages from Boscaino.  Id. at ¶ 5 and Ex. B.  Boscaino did

not initially appear, and the Court entered an order canceling Boscaino's lien, ordering Boscaino to return the Vehicle, and preserving VW Credit's damages claims for additional litigation. Id. at ¶ 6 & Ex. C. On or about April 29, 2022, the Court heard proceedings on Boscaino's contempt of court for refusing to release the Vehicle. Id. at ¶ 7 and Ex. D. On or about January 4, 2023, VW Credit moved for default judgment. Id. at ¶ 8 and Ex. E.

On or about March 17, 2023, Boscaino finally appeared to oppose the motion for default judgment and file a cross motion. Id. at ¶ 9 and Ex. F. Boscaino's cross-motion sought, *inter alia*:

> [A]n order pursuant to CPLR §511(a)(b), changing the place of trial based upon the fact that **Albany County is not the property [sic] venue**, given that none of the parties reside there, no aspect of the claim or transaction occurred there, Respondent/Defendant THE NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES never responded to the Petition, and Plaintiff never moved for default within a year thus this action should be dismissed *sue sponte* pursuant to CPLR §3215(c), thus making **the only proper venue for this action in Kings County**, and that Respondent/Defendant THE NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES was not a necessary party to this action, and that **Plaintiff only named Respondent/Defendant THE NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES to have jurisdiction in Albany County for Plaintiff's counsel's convenience**.

Id. at ¶ 9 and Ex. F (emphasis added); see also Complaint (making the same argument repeatedly).

Boscaino *lost its motion to change venue* per the Court's July 6, 2023 decision:

> [T]o move for change of place of trial upon the ground of improper venue, Boscaino first was required to serve a written demand for change of venue (see CPLR 511 [b]). There is no proof of such a demand here. Therefore, Boscaino is "not entitled to change of venue as of right," and the motion becomes "one addressed to the... court's discretion." (Accardi v Kaufmann, 82 AD3d 803, 803 [2d Dept 2011]; see Callanan Indus., Inc. v Sovereign Constr. Co., 44 AD2d 292, 295 [3d Dept 1974]).
>
> Boscaino proffers no grounds for a discretionary change of venue. Moreover, VW commenced this litigation in Albany County based on the fact that one of the parties, the Department of Motor Vehicles ("DMV"), resides here (*see* Vehicle & Traffic Law § 200 [1]; CPLR 503 [a]; 506 [a]; *State of New York v Quintal, Inc.*, 79 AD3d 1357, 1359 [3d Dept 2010]; Daimler Trust v Safeway Motors, Inc., 2013 NY Slip Op 31965[U], *1 [Sup Ct, Albany County 2013]). **VW was entitled to join the DMV as a party to freeze the vehicle's title, correct any unwarranted alterations and restore the title if necessary** (see CPLR 1001 [a]; 1002 [b]; *see e.g.* Matter of Ally Fin. Inc. v Bill's Towing Serv., Inc., 181 AD3d 1045, 1045 n 1

6

[3d Dept 2020], *lv denied* 35 NY3d 918 [2020]). **Indeed, Boscaino served VW with the Notice of Lien & Sale seeking to sell the vehicle through the authority of the DMV** (*see* NYSCEF Doc No. 5).

Accordingly… Boscaino's cross motion seeking change of venue is denied.

<u>See</u> Meola Decl., ¶ 10 and Ex. G (emphasis added).

On July 27, 2023, the Albany County Supreme Court denied a request by Boscaino's New York City-based counsel to appear virtually. <u>Id.</u> at ¶ 11 and Ex. H. The Court further denied *another* informal email request by Boscaino's counsel, wherein the court admonished Boscaino's counsel for failing to confer in good faith with counsel for VW Credit (*i.e.* Defendant in this action, Mr .Meola). <u>Id.</u> at ¶ 12 and Ex. I. On September 6, 2023, the Court scheduled an inquest on damages to be held on October 13, 2023. <u>Id.</u> at ¶ 13 and Ex. J. Boscaino also appealed the July 6, and the appellate court scheduled mandatory mediation for September 26. <u>Id.</u> at ¶ 15.

After the scheduling of the inquest, Mr. Meola received a purported "litigation hold letter" dated September 22, 2023, only 4 days before the appellate mediation. <u>Id.</u> at ¶¶ 14, 15 and Ex. K. The letter outrageously accused Mr. Meola of operating his firm as a criminal racketeering enterprise in violation of 18 U.S.C. § 1962. <u>Id.</u> at ¶ 14 and Ex. K. . Mr. Meola took the litigation hold letter as a blatantly improper attempt to leverage Mr. Meola, VW Credit's attorney, into pressuring VW Credit to compromise its own rights in the VW Litigation. <u>Id.</u> at ¶ 16.

During the September 26, 2023 settlement conference, an attorney for Boscaino stated words to the effect that "If [VW Credit and its attorneys] agreed to their [Boscaino's] value" of the Vehicle, then the "Rosen Law Firm LLC would agree to not pursue any federal lawsuit, would withdraw the… letter and treat it like it never happened." <u>Id.</u> at ¶ 17 and Ex. L (Affidavit of John. M. Dubuc, Esq.). The Meola Law Firm received further correspondence from Boscaino dated September 26, 2023—the day of the settlement conference—speciously demanding

"reimbursement from VW Credit, Inc. for all of its cost, expenses and attorneys' fees" for that conference. Id. at ¶ 18 and Ex. M.

Because of these improper attempts to leverage VW Credit's lawyers against VW Credit, VW Credit moved the Albany County Supreme Court for sanctions[2] against Boscaino and its attorney on or about September 25, 2023. Id. at ¶ 19 and Ex. N. Boscaino's response to VW Credit's motion was due on October 6, 2023. Id. at ¶ 20. Boscaino filed this action *that very day*, on October 6, 2023, and then attached this Federal complaint to its opposition in the VW Litigation. Id. at ¶ 21 and Ex. O. The motive is obvious: Boscaino sought to demonstrate a connection between the litigation hold letter and an actually-contemplated litigation to avoid sanctions, and decided to double down on the frivolous claims here. Id. Gary Rosen, Esq. also submitted an affirmation under oath stating that:

- Boscaino "sen[t] a legitimate litigation hold letter… which [Boscaino's] counsel has since substantiated by commencing an action in Federal Court which is what the legitimate litigation hold letter was issued in furtherance of;" see Meola Decl., Ex. O, ¶ 4;

- Accusing Mr. Meola of retaliating against counsel in "bad faith," id. at ¶¶ 4-5, and claiming that this Court's "federal District Judge… will find it quite troublesome that [VW Credit and Mr. Meola] have filed the instant Motion for Sanctions" because "it would have a chilling effect on anyone attempting to safeguard themselves" through legal action, id. at ¶ 15;[3]

- Attested that the claims against Mr. Meola in this action were legitimate, and made certain (wrong) legal arguments in that regard, see, e.g. id. at ¶ 10 (alleging Mr. Meola is a "debt collector");

---

[2] Mr. Meola acknowledges VW Credit's motion and his own 28 U.S.C. § 1927 motion here both seek sanctions for the same conduct, but there is no overlap in the relief requested. VW Credit is seeking to recover the fees expended by Mr. Meola, *as their attorney*, in the VW Credit Litigation. Separately, Mr. Meola, *as a party defendant*, is seeking to recover the fees he himself expended for Norris McLaughlin's efforts to seek dismissal of this Federal Court litigation.

[3] These statements are what is colloquially known as "ironic" and are almost certainly Boscaino's counsel "projecting" its own improper motives onto VW Credit and Mr. Meola.

- Claiming that "**the Federal Complaint has nothing to do with this action**," <u>id.</u> at ¶ 12 (emphasis added).

Notwithstanding the claim that the two litigations are unconnected, Boscaino's conduct in the VW Litigation further demonstrated that they are connected, including but not limited to a rambling October 11, 2023 letter wherein Boscaino's lawyer repeated most of the allegations here in support of a request to appear virtually in the VW Litigation. <u>Id.</u> at ¶ 22 and Ex. P.

### III. Boscaino's attorneys have acknowledged perjury and revealed the improper purpose to "hurt" Mr. Meola through this litigation.

Boscaino's attorneys have revealed, in discussions with counsel in this action, that (a) this lawsuit and the VW Litigation are connected (contrary to Mr. Rosen's sworn statements), and (b) this lawsuit was filed for the improper, retaliatory motive to "hurt" Mr. Meola. See November 20, 2023 Declaration of Nicholas A. Duston, Esq. (the "Duston Decl."), at ¶¶ 2-5. Specifically ,Mr. Rosen stated words to the effect of:

- What Really "pissed off" BCT and led BCT to instruct Mr. Rosen to file the EDNY Litigation was VW Credit's refusal to accept BCT's settlement offer in the VW Litigation;

- Because BCT was "pissed off" about the VW Litigation, BCT would not settle the EDNY Litigation unless Mr. Meola convinced VW Credit to take $5,000 to settle; this was in addition to the settlement demand made at the beginning of the call;

- That Mr. Rosen "could easily have named VW Credit and many other" of Mr. Meola's clients in the EDNY Lawsuit;

- That Mr. Rosen did not initially name Mr. Meola's clients to the EDNY Litigation because he was not "trying to affect Mr. Meola in any negative way," but he would do so by naming those clients in an amended complaint;

- That Mr. Rosen did not "want to hurt" Mr. Meola "with his clients by suing the clients" in the EDNY Litigation, but Mr. Rosen had previously "sued lots of defendants in a RICO case;"

- That although Mr. Rosen "did not want to hurt" Mr. Meola, if Mr. Meola did not do as Defendants demanded, then Mr. Rosen's "hands are going to be tied," because there was only "so much" he could do;

- That if "VW Credit" or "Mercedes"—two of Mr. Meola's clients—knew about Mr. Meola's filing of litigation for them in Albany, "they should be a defendant" to be "held accountable" in this Federal lawsuit;

- If Mr. Rosen had to "file an amended complaint" it would be "hard to settle after that because there's going to be too much other stuff in there;" and

- That Mr. Boscaino and BCT had been speaking to unspecified other body shops and tow companies about the plan to file a Federal RICO complaint against Mr. Meola and his clients.

<u>Id.</u> at ¶ 5(a-i).

After filing a letter in this action seeking the Courts' assistance in preventing Boscaino and Mr. Rosen from following through on the threat to "hurt" Mr. Meola, Mr. Rosen then threatened to file an ethics grievance against Mr. Meola's attorney. <u>Id.</u> at ¶ 6 and Ex. 1. Moreover, in a filing in the VW Litigation, Mr. Rosen further accused Mr. Meola's attorney here (Mr. Duston) ***of a felony***. <u>See</u> Meola Decl., Ex. Q at ¶ 88 (threatening that he "will be demanding the telephone records from Norris McLaughlin, P.A. to see if the telephone call was illegally recorded) <u>and</u> at ¶ 72 (arguing that the alleged conduct was "a crime."). Interestingly, Mr. Rosen suggests that the recitation of his statements is *so* accurate that he believes he was recorded, while at the same time failing to deny saying these things other than a half-hearted claim the statements are inaccurate. <u>Id.</u> at Ex. Q, ¶ 72 ("The verbatim statements… lead[] me to believe that the telephone call was recorded….") <u>and</u> ¶ 73 (arguing Mr. Meola's attorneys did "not correctly state what I said.").

Boscaino and Mr. Rosen apparently believe it is appropriate—when it is not—to threaten opposing counsel any time they want to gain an advantage in a litigation that they will otherwise lose. There is no indication the conduct will stop without an appropriate sanction, and, therefore,

Mr. Meola (and his counsel) respectfully request that the Court issue that sanction. The harassment and threats towards opposing counsel is unbecoming of a member of the bar, and must stop.

**LEGAL ARGUMENT**

I.     **Boscaino and Gary Rosen Esq. should be sanctioned pursuant to 28 U.S.C. § 1927 for their blatantly vexatious litigation conduct.**

Boscaino wrote a litigation hold letter to Mr. Meola, and then told his partner (John Dubuc) that "Rosen Law Firm LLC would agree to not pursue any federal lawsuit [and] would… treat it like it never happened" so long as Mr. Meola convinced VW Credit to agree to Boscaino's settlement number. See Meola Decl. at ¶ 17 and Ex. L. Then, when VW Credit sought to suppress this improper attempt to leverage its attorney, Boscaino and Mr. Rosen doubled down and filed the baseless Complaint here *on the day* its opposition to VW Credit was due. Id. at ¶ 21 and Ex. O. Then, Mr. Rosen threatened to add Mr. Meola's clients to this action on an even more frivolous RICO theory, stating that he did not want to "hurt" Mr. Meola, but his hands may be "tied" into doing so. See Duston Decl., ¶ 5. Then, Mr. Rosen threatened to file an ethics complaint against Mr. Meola's lawyer here—Mr. Duston—and implied Mr. Duston had committed a felony. Id.

These are the actions of an unhinged lawyer and litigant who know no boundaries. This action was a pure, unadulterated example of retaliation against Mr. Meola for winning the VW Litigation. In other words, it was *solely* brought to drive up the cost of the VW Litigation and improperly leverage Mr. Meola against his own client, VW Credit. This is sanctionable.

The relevant statute states that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct

28 U.S.C. § 1927. The Court also has separate, inherent power to sanction a litigant on a showing of subjective bad faith. Conway v. Conway, No. 17-CV-8245 (RJS), 2019 WL 1331624, at *10 (S.D.N.Y. Mar. 25, 2019) (Sullivan, U.S.C.J.) (citing Monroe v. Geo Grp., Inc., No. 14-cv-3130 (ER), 2017 WL 3973942, at *7 (SDNY Sept. 7, 2017)).

The Courts' power to sanction under 28 U.S.C. § 1927 *is not mooted by Boscaino's voluntary withdrawal of this litigation*. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 412 (1990) (Stevens, J. concurring in part and dissenting in part) (because "the dismissal of an action pursuant to Rule 41(a)(1) does not deprive the district court of jurisdiction to resolve collateral issues," a court "may impose sanctions…under 28 U.S.C. § 1927 against lawyers who have multiplied court proceedings vexatiously"); see also Enmon v. Prospect Capital Corporation, 675 F. 3d 138, 146 (2d Cir. 2012) ("we have never established a bright-line rule prohibiting district courts from ever sanctioning a party for a voluntarily withdrawn, frivolous appeal"); Crown Awards, Inc. v. Trophy Depot, Inc., 2017 WL 564885, at *14 (S.D.N.Y. Feb. 13, 2017) (after a voluntary dismissal pursuant to Rule 41(a)(1)(A) "the Court retains discretion whether to impose sanctions under its inherent power or § 1927.") (collecting cases).

The vexatious litigant statute "imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics, and provides courts with a cudgel to use, in their discretion, to deter unnecessary delays in litigation." Huebner v. Midland Credit Mgmt., Inc., 897 F.3d 42, 55 (2d Cir. 2018) (citation and quotation omitted). "To impose sanctions under [§ 1927], a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." Id. (citations and quotations omitted) see also United States v. Seltzer, 227 F.3d 36, 41–42 (2d Cir. 2000).

During Mr. Rosen's call with Mr. Duston on October 27, Mr. Rosen all but admitted that both Boscaino and Mr. Rosen are acting in bad faith. And the Court need not even find that they admitted to their motive, because "[a] court may infer bad faith when a party undertakes frivolous actions that are completely without merit." Huebner, 897 F. 3d at 55 (quotations and citations omitted); see also In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 116 (2d Cir. 2000) (stating the requisite finding of an attorney's "bad faith may be inferred where the action is completely without merit."); Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) (noting that under § 1927 or the Court's inherent authority, an award "is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose…."). For example, when a litigation "had no basis in the FDCPA," and counsel later tried to "change[] its theory of the case," sanctions were proper. Huebner, 897 F. 3d at 55.

This action has no merit at all. It is barred by the litigation privilege, collateral estoppel, and federal abstention doctrines. And even if it were not, the complaint barely pleads one element of *any* of its four causes of action (that being the regular issuance of process, something all litigation attorneys do). The sheer number of problems with Boscaino's Complaint indicates that neither Boscaino nor Mr. Rosen ever intended to win, as it is facially apparent that *zero* legal research went into the drafting of the Complaint. No. Boscaino filed the EDNY Complaint solely to hurt Mr. Meola and to coerce compliance with Boscaino's demands in the VW Litigation.

If that weren't' enough, the timeline of events further supports that both Boscaino and Mr. Rosen are proceeding in bad faith. Boscaino complains of hundreds of lawsuits, including one against Boscaino over 21 years ago, but filed this action only after the VW Litigation proceeded to an inquest and *on the very day* it was set to respond to a motion surrounding the improper litigation hold letter. And then Boscaino had Mr. Rosen deliver an ultimatum: force VW Credit

to settle the VW Litigation, or my hands will be "tied" into "hurt[ing]" Mr. Meola by adding his clients to a frivolous RICO action. Even this threat demonstrates bad faith through an utter lack of thought as to how a RICO claim could possibly be properly pled. <u>Kim v. Kimm</u>, 884 F.3d 98, 104 (2d Cir. 2018) ("allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act."). Boscaino and Rosen know that whether the claim had merit or not, RICO is "the litigation equivalent of a thermonuclear device" which they hoped would sufficiently scare Mr. Meola that he would comply with their improper demands. <u>Cedar Swamp Holdings, Inc. v. Zaman</u>, 487 F.Supp.2d 444, 449 (S.D.N.Y.2007).

Indeed, Mr. Rosen appears to be so unhinged that he believes he can threaten opposing counsel any time he wants. He does not even truly deny making the threats at issue here, instead hiding (again) behind fake outrage that these threats are somehow cloaked by Rule 408. Boscaino and Mr. Rosen have thoroughly demonstrated that they will not stop harassing, threatening, suing, and even falsely reporting crimes and ethics violations against opposing counsel unless a Court forces them to stop. One cannot fathom any set of facts that more warrants the issuance of sanctions than the current facts before this Court. Sanctioning Mr. Rosen and Boscaino is the only way to deter future misconduct.

## II. <u>Placing venue for a petition to cancel a garage lien in Albany County has been repeatedly upheld, *including in the pending case against Boscaino*</u>.

Boscaino's Complaint is based entirely on a faulty premise of New York law, which would have been revealed by even a cursory attempt to perform legal research on the issue prior to filing the Complaint. Boscaino suggests that it should not have been sued in Albany County because (a) other litigants have filed lawsuits in counties other than Albany, <u>see</u> Complaint, ¶ 15; (b) three Albany County Supreme Court Justices have transferred venue or otherwise commented that venue in Albany was improper, <u>id.</u> at ¶¶ 18, 20, 21. But Mr. Rosen cannot seriously believe that identifying some

other attorney's litigation tactics, and locating three very old trial court decisions (out of hundreds listed in the Complaint), can pass for appropriate legal research or a proper pre-filing investigation to confirm the "legal contentions are warranted..." Fed. R. Civ. P. 11(a)(2).

To begin with, the New York Court Rules state that "the place of trial of an action shall be in the county designated by the plaintiff, unless the place of trial is changed… by order upon motion, or by consent…." N.Y. CPLR § 509. There can be no harm in placing venue *anywhere* when the court rules quite literally say a plaintiff may freely select venue. Moreover, N.Y. CPLR § 506(a) authorizes venue based upon residence of at least one party within the chosen venue. See CPLR § 503. The NY DMV is resident in Albany County for venue purposes. See State v Quintal, Inc., 79 AD3d 1357, 1359 (3d Dept. 2010); State of New York v Mersack, 202 AD2d 899, 900 (3rd Dept. 1994). VW Credit had the right to join the NY DMV to freeze the vehicle title, correct any unwarranted alterations in the title, and restore the title if needed. See TMCC v. A. Emies Auto Body, Index No. 5544-12, Decision and Order, pp. 2-3 (Sup. Ct. Albany Cty. Feb. 7, 2013)[4] (discussing permissive joinder of the NY DMV in a petition to cancel a purported garage lien).

As one Albany County Supreme Court Justice assessed the issue:

> This action was brought on by order to show cause in which petitioner sought, and the court granted, a provision enjoining the DMV from transferring title to the vehicle during the pendency of the action. Respondent argues that this relieve was unnecessary because the order to show cause also directed that the vehicle be turned over to petitioner upon posting of a bond and also prohibited the sale or transfer of the vehicle or removal from its current location except for transfer to petitioner. **The argument assumes that in all instances the party holding the vehicle will comply with the order**. In seeking relief, however, petitioner should not be limited by this assumption **and had the right to seek the additional relief of freezing title**. As such, the DMV, though not a necessary party, was properly joined. It follows that, inasmuch as the principal office of the DMV is in Albany County, venue of the action is proper here.

---

[4] A copy of this decision is attached to the Meola Decl. as Ex. R.

Id. at pp. 2-3.[5]

Under CPLR § 1002 (b) the fact that relief has been sought against the DMV confirms that DMV is a proper party.  See Stewarts Tenants Corp v Square Industries Inc., 269 AD2d 246, 248 (1st Dept. 2000).  The nature of the Lien Law through which Boscaino sought to sell the Vehicle involved the NY DMV's authority.  Sharrock v Dell Buick, 45 NY2d 152, 162-163 (1978) ("[B]y permitting the possessory lienor to… foreclose his lien in a nonjudicial setting where the power of sale is premised on possession alone, the State has permitted the garageman to arrogate to himself the exclusive power of the sovereign to resolve disputes.").[6]  Boscaino, in asserting a possessory lien exercised the authority of the state to sell the Vehicle, and it is only natural to add the state as a party. Notably, the Court in the VW Litigation *reached this exact conclusion*.  See Meola Decl., Ex. G.

Boscaino's entire complaint is premised on the mistaken notion that the NY MVC is not a proper party—an issue it already lost—when the NY MVC is susceptible to *permissive* joinder in the complained-of state court litigation, regardless of whether it is a *necessary* party.

---

[5] A multitude of appellate decisions note—without disapproving—the practice of naming the NY DMV in challenges to garage liens, so that the NY DMV may freeze title and correct any defects necessitated by the proceedings.  See, e.g. Daimler Trust v. SG Autobody LLC, 112 AD 3d 1123, 1124, FN "*" (3d Dept. 2013)("Respondent New York State Department of Motor Vehicles was named as a party solely to freeze the vehicle's title during the pendency of this proceeding"); Nissan Motor Acceptance Corp. v All County Towing, 161 AD 3d 1423 , 1426, FN 1 (3d Dept. 2018) (same); Ally Fin. Inc. v All County Towing, 166 AD 3d 1442, 1443, FN "*" (3d Dept. 2018) (same); Ally Fin. Inc. v. Bill's Towing Serv. Inc., 181 AD 3d 1045, 1045, FN 1 (3d Dept. 2020) (same); Manufacturers & Traders Tr. Co. v. J.D. Marine Serv., 187 A.D.3d 1249, 132 N.Y.S.3d 450, 452 (2020)(dismissing appeal from motion to change venue as untimely).

[6] The case also notably stated that "By permitting a creditor to hold and sell a debtor's property unless his demands are met, the State empowers the garageman to engage in conduct which is tantamount to blackmail."  Sharrock, 45 N.Y.2d at 165.

**III.**  **Any modicum of pre-filing legal research would have revealed that Boscaino's arguments were barred by preclusionary doctrines and the litigation privilege.**

Boscaino and Mr. Rosen's bad faith are further demonstrated by the utter failure to consider the interrelation between the VW Litigation and this action. Even a mere ounce of research would have revealed that Boscaino's complaint here was barred, *at least*, by principles of collateral estoppel, *Colorado River* abstention, and New York's litigation privilege.

**A.**  **Collateral Estoppel.**

The Albany County Supreme Court already concluded, in the VW Litigation, that "VW was entitled to join the [NY] DMV," and that, therefore, venue in Albany was proper. See Meola Decl., ¶ 10 and Ex. G. New York collateral estoppel principles apply as to this prior determination. Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 93 (2d Cir. 2005) (citing 28 U.S.C. § 1738) ("[F]ederal courts to accord state judgments the same preclusive effect those judgments would have in the courts of the rendering state."). Collateral estoppel prevents Boscaino from relitigating an identical issue decided against Boscaino in a prior action where Boscaino had a full and fair opportunity to, and where that issue is decisive of the present action. Curry v. City of Syracuse, 316 F.3d 324, 331 (2d Cir. 2003). That is certainly the case here. Boscaino filed a motion to change venue, which the Albany Court denied. The propriety of venue in Albany is dispositive of every single one of Boscaino's claims. Boscaino's claims are, therefore, barred by collateral estoppel.

**B.**  **Federal Abstention.**

Even a cursory reading of Boscaino's complaint demonstrates that Boscaino is a sore loser lashing out at an attorney who defeated it in state court litigation. Federal Courts routinely abstain from hearing such complaints, because the Eastern District of New York does not have appellate jurisdiction over the Supreme Court of Albany County.

Boscaino's claims surrounding the ongoing VW Litigation were barred by the *Colorado River* abstention doctrine. *Colorado River* abstention applies where "state and federal courts exercise concurrent jurisdiction simultaneously." Burnett v. Physician's Online, Inc., 99 F.3d 72, 76 (2d Cir.1996). A federal court may abstain from hearing a matter for "reasons of wise judicial administration." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976); see also Burnett, 99 F.3d at 76. *Colorado River* abstention "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River, 424 U.S. at 817. The district court must weigh six factors: (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. Burnett, 99 F.3d at 76 (citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)). "The weight to be given to any one factor may vary," but "[b]y far the most important factor... [is] the 'clear federal policy... of avoidance of piecemeal adjudication....'" Moses H. Cone Mem'l Hosp., 460 U.S. at 16 (quoting Colorado River, 424 U.S. at 819).

The first factor weighed in favor of abstention, because the VW Litigation already assumed jurisdiction over a *res*, the Vehicle. The second factor is neutral, because neither forum is particularly more convenient; Albany and Brooklyn are not very far, Boscaino should be able to find ample (and likely cheaper) representation in Albany.[7] The fourth factor weighed in favor of abstention, because

---

[7] See, e.g. State of NY v Quintal, Inc., 79 AD3d 1357, 1358 (3d Dept. 2010)(standard for change of venue not met by merely asserting that "two counties are 185 miles and four hours apart"); McMurray v Kiamesha Concord, Inc., 178 AD2d 825, 827 (3rd Dept. 1991) (change of venue from county with less congested docket (Sullivan County) to county with more congested docket (Suffolk County) not appropriate without accounting for difference in trial calendars).

the state court obtained jurisdiction in 2022 and has already proceeded through an inquest. <u>Moses H.</u> <u>Cone Mem'l Hosp.</u>, 460 U.S. at 21 ("[P]riority should... be measured... in terms of how much progress has been made in the two actions."). The fifth factor weighed *heavily* in favor of abstention, because state law *procedural* rules surrounding venue supply the rule of decision. The sixth factor weighed in favor of abstention, because New York State Courts can *better* protect Boscaino's procedural venue rights than could this Federal Court. This leaves the third, most important factor, which also weighed in favor of abstention, because where there has already been extensive progress in a state court litigation, "district courts routinely abstain under *Colorado River* …." <u>Tessera, Inc. v. Amkor Tech.,</u> <u>Inc.</u>, No. CV 12-852-SLR, 2014 WL 6997442, at *3 (D. Del. Dec. 10, 2014) (collecting cases). Boscaino is attempting to relitigate an issue—the propriety of venue—that it *already* lost in the state court action. The proper course of action was for Boscaino is to appeal, *not* to collaterally attack the State Court's ruling (and overtly attack the opposing lawyer) here.

### C.    New York's absolute litigation privilege.

Again, had Mr. Rosen put even a few *minutes* of thought into the Complaint, he would have considered and then further researched New York's absolute litigation privilege, which would bar Buscaino's claims here or anywhere else. New York law dictates that "statements made by… attorneys… in the course of judicial… proceedings are absolutely privileged, notwithstanding the motive with which they are made, so long as they are material and pertinent to the issue" before the court. <u>Officemax Inc. v. Cinotti</u>, 966 F. Supp. 2d 74, 79 (E.D.N.Y. 2013) (citations omitted). New York's litigation privilege "is the broadest possible of privileges and any matter which... may be or may become material or pertinent is protected." <u>Kelly v. Albarino</u>, 485 F.3d 664, 666 (2d Cir. 2007). It is so broad that it would even protect Mr. Meola even from RICO claims, had they been filed as threatened. <u>See</u>, <u>e.g.</u>, <u>Singh v. HSBC Bank USA</u>, 200 F. Supp. 2d 338, 339–40 (S.D.N.Y. 2002) ("Even if plaintiffs were able to plead a RICO cause of action... [the alleged conduct] would be entitled

to absolute immunity as a matter of law."). Because Boscaino complains *solely* about Mr. Meola filing litigation in Albany County—*i.e.* filing pleadings—and no other action, Mr. Meola's conduct was absolutely privileged, and this case would have been dismissed for that reason alone.

I.   **Boscaino and Mr. Rosen's bad faith is further demonstrated by the paucity of elements actually pled for any of the Complaints' purported claims.**

Even a cursory read of the Compliant indicates that nearly zero thought went into whether the actions complained of actually violated the FDCPA, the Sherman Act, GBL § 349, or constituted abuse of process. Anyone reading the Complaint likely paused, in particular, at the first reference to the Sherman Act antitrust laws and thought "what? really?" The complete lack of care demonstrates Boscaino's and Mr. Rosen's bad faith.

A.   **Boscaino did not plead a single element of a violation of the FDCPA.**

To say Boscaino failed to do an adequate pre-filing investigation into whether its 15 U.S.C. § 1692 *et. seq.* FDCPA claims is an understatement. See Fed. R. Civ. P. 11(b)(2). Boscaino did not meet *even a single element* of that claim. Not one. To state an FDCPA claim, Boscaino was required to allege (1) that it "is a consumer," (2) that the "challenged practice involves an attempt to collect a debt," and (3) that the defendant "violated a provision of the FDCPA in an attempt to collect the… debt." Winehouse v. GC Servs. Ltd. P'ship, No. 16-cv-03110(FB)(RML), 2017 WL 2455075, at *3 (E.D.N.Y. June 6, 2017).

Boscaino is a businesses. See Compl., ¶¶ 5, 23-30. "Consumer" under the FDCPA means "any natural person..." 15 U.S.C.A. § 1692a. "Natural person" means human being, not towing company. Id. Boscaino also does not meet one of the limited exceptions where someone other than the "Consumer" has standing to sue. Bank v. Pentagroup Fin., LLC, No. 08-cv-5293(JG)(RML), 2009 WL 1606420, at *3 (E.D.N.Y. June 9, 2009) (plaintiff must stand in consumer's shoes or otherwise be exposed to conduct directed *toward the debtor*). No co-creditor

could ever sue the attorney of another co-creditor over conduct in a lien priority dispute in collateral securing both creditor's debt, activity which has nothing to do with the debtor.

Mr. Meola is also not a debt collector when filing lawsuits surrounding a lien-priority dispute on behalf of one creditor against another creditor relating to the possession of collateral. Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029, 1038 (2019) ("[T]hose who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the Act"). Nor is a lien-priority dispute between co-creditors an attempt to collect a debt, because the assertion of a lien is not itself a debt. Singh v. NYCTL 2009-A Tr., No. 14 CIV. 2558, 2016 WL 3962009, at *5 (S.D.N.Y. July 20, 2016) ("Plaintiff's claims fail under the FDCPA because the liens are not debt under the statute"), aff'd, 683 F. App'x 76 (2d Cir. 2017); Boyd v. J.E. Robert Co., 765 F.3d 123, 126 (2d Cir. 2014) (tax and utility liens are not debt under FDCPA); Jordan v. Tucker, Albin & Assocs., No. 13-cv-6863(SIL), 2018 WL 4259987, at *2 (E.D.N.Y. Sept. 6, 2018) (filing of mechanic's lien did not constitute collection of debt subject to FDCPA).

Nor is Mr. Meola alleged to have violated any provision of the.  The allegations in this regard are exactly what *Iqbal* and *Twombly* prohibit: Boscaino merely states that  filing litigations in Albany "was and is unfair and uses unconscionable means to collect or attempt to collect debts." See Compl., ¶ 61.  This bare-bones statement of harm makes no sense when the CPLR permits a plaintiff to place venue in Albany, and a New York Court has already upheld doing so, and when Mr. Meola's conduct did not involve "collect[ing]… debts."

**B.      Boscaino failed to plead even one element of a GBL § 349 violation.**

To plead a case under New York General Business Law § 349 ("GBL 349"):

A plaintiff must allege that: (1) the defendant's conduct was consumer-oriented;
(2) the defendant's act or practice was deceptive or misleading in a material way;
and (3) the plaintiff suffered an injury as a result of the deception.

Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc., 37 N.Y.3d 169, 176 (2021). Once again, Boscaino did not merely fail to plead *an* element, it failed to plead *any* of them.

Conduct is "consumer-oriented" when it has a "broader impact on consumers at large." <u>Id.</u> at 177 (citations omitted). Private disputes unique to the parties are not consumer oriented. <u>Id.</u> Mr. Meola's conduct is not alleged to have any bearing on any consumers. Mr. Meola provides services—legal representation—to "automobile leasing companies and finance companies." <u>See</u> Compl., ¶ 45. Mr. Meola's conduct is directed towards other businesses. <u>Id.</u> at ¶¶ 5, 23-30. The only "consumers" are those who owe a debt to Mr. Meola's clients secured by liens on the. <u>Id.</u> at ¶ 57. If anything, Mr. Meola's conduct *helps* those consumers because he was alleged to seek to recover vehicles "without the payment of towing charges" to Boscaino, <u>Id.</u> at ¶ 60, fees that would otherwise be ***added*** to the consumers' debt! This is not "consumer-oriented" conduct.

Nor was Mr. Meola's conduct pled to be "deceptive or misleading in a material way." Other than repeating this boilerplate element, the words "deceptive" and "misleading" does not even appear in the Complaint. <u>See</u> Compl., ¶ 74. There are no allegations of misrepresenting anything to anyone; Mr. Meola is solely pled to place venue in Albany County by naming the NY DMV as a defendant, something that openly appears in any particular complaint.

And Boscaino fails to allege that it "suffered an injury as a result of the deception." Again, there was no deception. Moreover, Boscaino pled no plausible injury relating to litigation in Albany County. Boscaino is located within the Eastern Districts of New York, while Albany is in the Northern District of New York, and complaining that Northern District lawyers are more expensive than Eastern District lawyers is implausible on its face. <u>Doe v. Cornell Univ.</u>, No. 17-cv-0402(GTS)(DEP), 2019 WL 1567535, at *7 (N.D.N.Y. Apr. 11, 2019) (noting that in "the

Southern District of New York… rates tend to be higher than in the Northern District of New York).  Nor did Boscaino's gripes about "travel" and "distance" suggest a plausible injury in 2023, particularly coming from a law firm with offices in two non-contiguous states (New York and Florida).  See State v. Konikov, 182 A.D.3d 750, 755 (2020) (opposing party's offer to conduct deposition remotely negated argument that change of venue was necessary for convenience).

### C.    Boscaino did not pled a violation of the Sherman Act.

No part of Boscaino's complaint makes more obvious the utter and complete lack of legal research than its attempt to plead a violation of 15 U.S.C. 1 *et. seq.*, the Sherman Act.  Boscaino claims that Mr. Meola "obtain[s] business from [his] clients because law firms that would have had to file lawsuits against automobile collision shops" in New York city "could not compete with" Mr. Meola, "causing the clients… to use the legal services of" Mr. Meola.  See Compl., ¶ 78.

To begin with, there is no conceivable set of facts wherein Boscaino could assert the rights of law firms who would be ***hired to sue, or actually would be suing, Boscaino***.  Yong Ki Hong v. KBS Am., Inc., 951 F. Supp. 2d 402, 415 (E.D.N.Y. 2013)(citations, quotations, and internal alterations omitted) ("First, an antitrust plaintiff must plausibly allege that it suffered a special kind of antitrust injury. Second, the grievant must show that it is a suitable plaintiff to pursue the alleged antitrust violations...").  Boscaino pled Mr. Meola's "antitrust" conduct injured *other people*.

Boscaino also failed to plead an antitrust claim at every level. The Sherman Act prohibits "[e]very contract, combination… or conspiracy[] in restraint of trade or commerce…"  15 U.S.C. 1.  No contract, combination, or conspiracy was pled ***at all***.  See Generally Compl., *passim*.  All Boscaino pled is that Mr. Meola represents clients by filing lawsuits in Albany, with no allegation that Mr. Meola conspired to effect the market for legal services with anyone, anywhere.

The Sherman Act also does not prohibit ***all*** restraints on trade, only ***unreasonable*** ones. Texaco Inc. v. Dagher, 547 U.S. 1, 5 (2006).  Only certain restraints are *per se* unreasonable, not

requiring an elaborate study of the industry to establish illegality; all other restraints can only be evaluated by analyzing the business and the "competitive significance of the restraint." Nat'l Soc. of Pro. Engineers v. United States, 435 U.S. 679, 692 (1978). *Per Se* unreasonable agreements are limited to "horizontal" agreements among competitors (such as price fixing or market division), which are not at issue here. Gough v. Rossmoor Corp., 585 F.2d 381, 386 (9th Cir. 1978). Thus, Boscaino must have pled a restraint of "competitive significance." Nat'l Soc. of Pro. Engineers v. United States, 435 U.S. 679, 692 (1978). It is implausible on its face that a single attorney could possibly do anything of "competitive significance" in the market for legal services in, of all places, New York City. Mr. Meola was not alleged, for example, to have monopolistic pricing power, nor would it even be plausible to plead that he (or any particular law firm) actually does. Indeed, Mr. Meola's conduct, as pled, conceivably *benefits* the market for legal services by moving litigations to a venue with a less congested docket and to a market where legal services are typically less expensive. Nat'l Soc. of Pro. Engineers v. United States, 435 U.S. 679, 695 (1978) ("The assumption that competition is the best method of allocating resources in a free market recognizes that all elements of a bargain—quality, service, safety, and durability—…are favorably affected by the free opportunity to select among alternative offers.").

> **D.      Boscaino did not plead a claim for abuse of process.**

Boscaino pleads that the filing of the VW Litigation, and the other listed litigations, constitute the tort of abuse of process. Under New York Law, abuse of process has three elements: (1) the defendant "regularly issued process," (2) with an intent to do harm without excuse or justification," and (3) "use of the process in a perverted manner to obtain a collateral objective." Lynn v. McCormick, 153 A.D.3d 688, 688 (2d Dept. 2017). Here—***for the first time***—Boscaino did manage to plead one element essentially by accident: Mr. Meola does, in fact, regularly issue process in his role as a practicing litigation attorney, a function that goes with that job.

However, Boscaino's limited ability to pled one element of only one of its four claims is as far as it gets, because "[t]he mere commencement of a lawsuit cannot serve as the basis for a cause of action alleging abuse of process…. There must be an ***unlawful*** interference with one's person or property." <u>Lynn</u>, 153 A.D. 3d at 688 (emphasis added). Mr. Meola may file the VW Litigation, or any other similar lawsuit, in Albany County, given that (a) the CPLR explicitly allows a plaintiff to choose venue, and (b) numerous courts have approved of the procedure used. <u>See</u> § II, *supra*. This negates the "unlawful interference" as well as the intent element of an abuse of process claim. <u>Hoyos v. City of New York</u>, 999 F. Supp. 2d 375, 391 (E.D.N.Y. 2013) (probable cause for prosecuting a criminal case "negates a claim for abuse of process").

Nor did Boscaino plead a collateral objective; Boscaino pled that Mr. Meola files cases in Albany County *so he can win them for his clients*, an overt, non-collateral objective of any lawsuit, anywhere. <u>See</u>, <u>e.g.</u> Compl. ¶ 5 (alleging the lawsuits are filed "to vacate garageman's liens," the precise purpose of the type of suit filed); <u>and</u> ¶ 12 (noting Mr. Meola files the lawsuits "on behalf of [his] clients]"). The objective of winning lawsuits is not "collateral." <u>Hoyos</u>, 999 F. Supp. 2d at 392 (allegation that criminal prosecution was commenced "to obtain a collar" not collateral because defendants "employed legal process for the purpose… for which the law created it.").

## <u>CONCLUSION</u>

Mr. Meola respectfully requests that the Court issue an appropriate sanction in an amount to be determined but a supplemental filing should the Court order that sanctions be issued.

Dated: November 20, 2023

**NORRIS McLAUGHLIN P.A.**
*Attorneys for Defendants*

By:    */s/ Nicholas Duston*
        Nicholas A. Duston, Esq.